# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### CASE NO.:

MAUREEN ALEXANDER,

JOHN KORMAN,

        Plaintiffs,

vs.,

| | |
|---|---|
| SUNTRUST MORTGAGE INC, | ) |
| JOHN MALDONADO, an individual, | ) |
| ISGN FULFILLMENT SERVICES INC, | ) |
| MARSHALL C. WATSON Esq., an individual, | ) |
| MARSHALL C. WATSON, P.A., | ) |
| CHOICE LEGAL GROUP, P.A., | ) |
| STOREY LAW GROUP, P.A., | ) |
| NATIONSTAR MORTGAGE LLC, | ) |
| CARRINGTON MORTGAGE SERVICES, LLC, | ) |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, | ) |
| STANWICH MORTGAGE LOAN TRUST, | ) |
| SERIES 2012-13, | ) |
| CHRISTIANA TRUST, | ) |
|       Defendants. | ) |
| _____/ | |

8:14 CV1552 T 17 EAJ

FRAUD UPON THE COURT

FRAUDULENT REPRESENTATION

EXTRINSIC FRAUD

INTRINSIC FRAUD

CIVIL CONSPIRACY

VIOLATION OF TILA / RESPA

VIOLATION OF 15 USC 1692J, 812

VIOLATION OF FDCPA

VIOLATION FCRA

Trial by Jury, Rule 38

## VERIFIED COMPLAINT

**NOW COMES**, MAUREEN ALEXANDER, joined with JOHN

KORMAN (hereinafter "Plaintiff"), both Title-Holders of property located at

postal address 3451 Jarvis Street, Holiday Florida 34690, file this verified

complaint, against SUNTRUST MORTGAGE INC, NATIONSTAR

TBA-24262
$400

**Page 1 of 85**

MORTGAGE, LLC, CARRINGTON MORTGAGE SERVICES, LLC,

MARSHALL C. WATSON Esquire, LAW OFFICE OF MARSHALL C.

WATSON, P.A., n/k/a CHOICE LEGAL GROUP, P.A., STOREY LAW

GROUP, P.A., JOHN MALDONADO, an individual, ISGN FULFILLMENT

SERVICES INC, CHRISTIANA TRUST, A DIVISION OF WILMINGTON

SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH

MORTGAGE LOAN TRUST, SERIES 2012-13, WILMINGTON SAVINGS

FUND SOCIETY, FSB, and STANWICH MORTGAGE LOAN TRUST

SERIES 2012-13, jointly, or severally, for violation of the Florida Consumer

Collection Practices Act, (hereinafter "FCCPA"); violation of the Federal Fair

Debt Collection Practices Act (hereinafter "FDCPA"); violation of the Truth in

Lending Act ("TILA"); violation of the Real Estate Settlement Procedures Act

("RESPA"); violation of the Fair Credit Reporting Act (hereinafter "FCRA");

also Defendants jointly, or severally, committed an act of Intrinsic Fraud,

Extrinsic Fraud, and Civil Conspiracy, acts contained within a wrongful

foreclosure action initiated by and through a misrepresentation of a material

fact; Plaintiff demands a Trial-by-Jury;

       Plaintiff alleges the following under penalty of perjury, predicated

upon personal knowledge and Plaintiff is beyond the age of majority, of sound

mind, state the following on and for the record, under JURAT, starting at paragraph 17.

## JURISDICTION

1.        Jurisdiction is conferred upon this Court, in part, pursuant to 28 U.S.C. §1331 (Federal Question), and 28 U.S.C. 1367 (supplemental state claim), a claim for relief under the Fair Debt Collection Practices Act, as amended by Public Law 109-351, §§801-02, 120 Stat. 1996 (2006), 15 U.S.C. § §1692e, 1692g, 1692j, and to hear a claim for relief under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)., TILA, 15 U.S.C. §1601 *et seq.*, RESPA, 12 U.S.C. §2601 *et seq*; concerning real property in Plaintiff's possession, located within Pasco County, Florida; and the amount under controversy exceeds $100,000.00; furthermore,

2.        Venue lies in this District pursuant to 28 U.S.C. §1391(b)(2) as Defendants conduct significant business within this District and that a substantial part of the events or omissions giving rise to these alleged wrongful act(s) alleged, namely an *in rem* action against Plaintiff's real estate occurred within this judicial district, therefore Defendants are subject to *in personam* jurisdiction in this judicial district.

## PARTIES

3.        MAUREEN ALEXANDER, an individual over the age of majority,

a citizen of the State of Florida and owner of the property in question at all

times relevant;

4.        JOHN KORMAN, an individual over the age of majority, a citizen

of the State of Florida and owner of the property in question at times

relevant;

5.        SUNTRUST MORTGAGE INC is a foreign Florida registered

for Profit Corporation, postal address 901 SEMMES AVE, RICHMOND,

VA 23224, registered agent, CORPORATION SERVICE COMPANY,

1201 HAYS STREET, TALLAHASSEE, FL 32301, and was the initial

Plaintiff in a Civil Circuit Case No. 2009-CA-011351 WS, filed 8th day of

December 2009, which spawned this action;

6.        JOHN MALDONADO, an individual, over the age of majority,

employed by ISGN FULFILLMENT SERVICES INC, at all times relevant,

executed an ALLONGE, allegedly acting in the capacity of Agent for and on

behest of CHOICE MORTGAGE BANK;

7.        ISGN FULFILLMENT SERVICES INC, is a Florida foreign

registered for profit corporation, postal address 2330 Commerce Park

Drive, NE, SUITE 2, Palm Bay, Florida 32905, registered agent, NRAI

SERVICES, INC., 1200 South Pine Island Road, Plantation, FL 33324,

which fabricates documents for persons with the intent to foreclose upon

real estate, in need of fabricated documents;

8.        MARSHALL C. WATSON Esquire., BAR/BOND number

365505, an individual, an Attorney in the business of collecting debts, over

the age of majority, also a citizen of the State of Florida, postal address of

1901 West Cypress Creek Road, Third Floor, Fort Lauderdale, FL 33309;

9.        MARSHALL C. WATSON, P.A., n/k/a CHOICE LEGAL

GROUP, P.A., is a Florida professional association, postal address, 1901

West Cypress Creek Road, Third Floor, Fort Lauderdale, FL 33309, the

initial Plaintiff's Attorney of record which filed the Civil Circuit Case No.

2009-CA-011351 WS, *ab initio*;

10.       CHOICE LEGAL GROUP, P.A., f/n/a LAW OFFICE OF

MARSHALL C. WATSON, P.A., a Florida for profit professional association,

postal address 1901 West Cypress Creek Road, Third Floor, Fort

Lauderdale, FL 33309, registered agent PARACORP INCORPORATED,

236 EAST 6TH AVENUE, TALLAHASSEE, FL 32303;

11.       STOREY LAW GROUP, P.A., a Florida for profit professional

association, postal address 3191 MAGUIRE BLVD., SUITE 257,

ORLANDO, FL 32803, registered agent EDWARD A. STOREY III, 3191

Maguire Blvd., Suite 257, ORLANDO, FL 32803;

12.        NATIONSTAR MORTGAGE LLC is a Florida foreign registered

for profit Limited Liability Company, postal address 350 HIGHLAND DRIVE,

LEWISVILLE, Texas 75067, registered agent CORPORATION SERVICE

COMPANY, 1201 HAYS STREET, TALLAHASSEE, FL 32301-2525, and

the substituted party Plaintiff as of the 24th day of May 2011, in Civil Circuit

Case No. 2009-CA-011351 WS;

13.        CARRINGTON MORTGAGE SERVICES, LLC is a Florida

registered foreign Limited Liability Company, located at postal address

1610 E. Saint Andrew Place, Suite B-150, Santa Ana, California 92705,

registered agent, CT CORPORATION SYSTEM, 1200 SOUTH PINE

ISLAND ROAD, PLANTATION, FL 33324, is a debt collector;

14.        WILMINGTON SAVINGS FUND SOCIETY, FSB, a Delaware

Corporation, registered agent WILMINGTON SAVINGS FUND SOCIETY,

500 Delaware Avenue, Wilmington Delaware 19801;

15.        STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, is

an unregistered phantom entity, which purports to be the substituted party

Plaintiff as of 25th day of July 2013; Summons to be served upon

WILMINGTON SAVINGS FUND SOCIETY, 500 Delaware Avenue,

Wilmington Delaware 19801.

16.        CHRISTIANA TRUST is A DIVISION OF WILMINGTON

SAVINGS FUND SOCIETY, FSB, the present party Plaintiff in CASE No.

51-2009-CA-011351 WS, is an unregistered phantom entity, which purports

to be or is the present substituted party Plaintiff's Trustee in CASE No. 51-

2009-CA-011351 WS, as of 25th day of July 2013, a debt collector, or debt

buyer; Summons to be served upon WILMINGTON SAVINGS FUND

SOCIETY, 500 Delaware Avenue, Wilmington Delaware 19801.


State of Florida           }
                           }  ss
County of Palm Beach   }

## FACTUAL BACKGROUND

17.        This legal action arises as a direct result of a wrongful and

unverified foreclosure action initiated by SUNTRUST MORTGAGE, INC.,

(hereinafter "SUNTRUST"), by and through the law office of MARSHALL C.

WATSON P.A., the subject unverified foreclosure action commenced on the

25th day of November 2009; CASE No. 51-2009-CA-011351 WS,

(hereinafter "Civil-Circuit-Case") found in Pasco County, Florida;

18.         Stepping back to the 25th day of February 2008, Plaintiff executed and delivered a Promissory-NOTE to CHOICE MORTGAGE BANK, a Florida corporation; contemporaneously executed a Mortgage in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (hereinafter "MERS");

19.         Plaintiff is a Real Estate Agent and in the year 2009 the industry as a whole fell into a deep recession and as a direct cause of the wrongful and unverified foreclosure action scaring off the tenant, Plaintiff who was already behind in payment fell further behind in payment, and was hamstrung from catching up and becoming current after loosing the tenant, *infra*;

20.         SUNTRUST on the 25th day of November 2009 filed the Civil-Circuit-Case in its own name, for it's own benefit, however concedes it is actually the Servicer, acting for and on the behest of the Real-Party-in-Interest, Federal National Mortgage Association (hereinafter "Fannie Mae");

21.         SUNTRUST alleges in the Civil-Circuit-Case it is authorized by Fannie Mae to bring a foreclosure action against Plaintiff herein, however SUNTRUST did not attach its Delegation of Authority, Power-of-Attorney or any similar authorization with the Complaint docketed in the Civil-Circuit-Case;

22.      When SUNTRUST duly [sic] served the subject *lis pendens* with the accompanied unverified Foreclosure Complaint upon the tenant occupying the subject property located at the postal address of 3451 JARVIS STREET, HOLIDAY FLORIDA 34690; shortly thereafter the tenant abandoned the property;

23.      Once the subject property stood vacant vandals gained access and literally destroyed the interior of the home by, *inter alia*, ripping out all the copper-wiring from interior walls, absconded with toilet fixtures and sinks, smashed interior lighting fixtures, punched holes in the walls and ceiling, while residing rent free in the subject property for a period of time;

24.      The subject property is no longer inhabitable in its present condition, *ergo,* is not rentable, causing financial injury to Plaintiff, as a direct and proximate cause of a wrongful, fabricated foreclosure action on the part of Defendant SUNTRUST, *et al*;

25.      On the 19th day of January 2010, Plaintiff is duly served with said foreclosure action; see a copy of the subject Complaint, Compilation of Exhibit "A" is hereto attached and incorporated herein by reference;

26.      SUNTRUST claims, in the Civil-Circuit-Case, *inter alia*, *"Federal National Mortgage Association is the owner of the note."* [see Complaint paragraph. 3]

27.     SUNTRUST also claims, it is *"... the servicer... is the holder of the note."*

28.     SUNTRUST further claims Fannie Mae authorized it *"... to bring this present action **on the note**."* [emphasis added]; however,

29.     The NOTE attached to the subject Complaint identifies "CHOICE MORTGAGE BANK, A FLORIDA CORPORATION" (hereinafter "CHOICE") as the Lender;

30.     "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC" is identified as the Mortgagee, although MERS did not lend any money to Borrower, and there is no claim Borrower or Plaintiff herein owes any money to MERS; furthermore,

31.     Within the four corners of the Civil-Circuit-Case there is no nexus between the Lender CHOICE and the initial Plaintiff SUNTRUST;

32.     Within the four corners of the Civil-Circuit-Case there is also no nexus between the Lender CHOICE and Fannie Mae;

33.     SUNTRUST made a misguided attempt to show an interest as a non-holder in possession, with the rights of the holder, by indorsing the ORIGINAL NOTE, *"Without Recourse" "PAY TO THE ORDER OF"* [left in blank], signed by Deborah P. Ellis, in the capacity of Vice President;

however, **Judicial Notice should be taken** that the ORIGINAL NOTE

does not contain the Lender's indorsement, CHOICE MORTGAGE BANK;

34.      In order to remedy the fatal defect of Lender's missing

indorsement on the NOTE, on information and belief, on that premise allege

that the Defendant SUNTRUST, or its Agent, requisitioned an ALLONGE

fabricated from whole-cloth from Defendant ISGN FULFILLMENT SERVICES

INC, (hereinafter "ISGN"); and the alleged authorized signatory for CHOICE

is an employee of ISGN, JOHN MALDONADO, acting as an authorized

Agent for CHOICE, see Plaintiff's Compilation of Exhibit "B" of the

"ORIGINAL NOTE and the "ORIGINAL ALLONGE TO NOTE," hereto

attached and incorporated herein by reference;

35.      The ALLONGE docketed with the Clerk of Court as the

"ORIGINAL ALLONGE TO NOTE," on or shortly after the 28th day of

September 2011, is six-hundred-and-seventeen (617) days after docketing

the initial Complaint; and is four-hundred-and-twenty-one (421) days after

the Plaintiff docketed the "ORIGINAL NOTE," in the Civil-Circuit-Case;

36.      Premises considered, the subject ORIGINAL ALLONGE TO

NOTE is a void instrument, as it is not dated, or authenticated, nor

permanently affixed to the ORIGINAL NOTE, which has more than enough

room on it for another stamp for indorsement thereof; furthermore,

37.        Neither ISGN [an alleged "Document Mill"] nor JOHN MALDONADO attached their agency agreement, or similar authorization with the subject ALLONGE[1]; and,

38.        The subject ORIGINAL ALLONGE TO NOTE, purports to assign Plaintiff's Mortgage and the NOTE set over to SUNTRUST, the Servicer, an intermediary, as how Fannie Mae comes to be the Owner of the NOTE can not be discovered by the documented *prima facie* evidence contained within the four corners of the Civil-Circuit-Case;

39.        Defendant SUNTRUST, also employed the services of an other alleged "Document Mill" known as NATIONWIDE TITLE CLEARING INC., (hereinafter "NTC"), a Florida for profit corporation, a Palm Harbor company, fabricated an Assignment from whole-cloth, whereby MERS as nominee for CHOICE purports to assign the Mortgage, together with the NOTE, set over same to NATIONSTAR MORTGAGE LLC (hereinafter "NATIONSTAR"), on the 8th day of December 2010, recorded on the 10th day of January 2011;

---

[1] An ALLONGE is a slip of paper permanently affixed to a negotiable instrument, as a bill of exchange, for the purpose of receiving additional indorsements thereon, because there is no space left on the bill itself to hold another indorsement;

40.     It appears, *prima facie*, CHOICE MORTGAGE BANK assigned and transferred the Mortgage and the NOTE twice, once to SUNTRUST by way of an ALLONGE which is undated, and then again to NATIONSTAR by way of a MERS assignment, executed post-commencement; see Exhibit "C" hereto attached and incorporated herein by reference;

41.     Said Assignment is executed by a NTC employee BRYAN BLY, acting in the capacity of VICE PRESIDENT of MERS;

42.     BRYAN BLY is a well known "Robo-Signer," and is a Vice President of MERS, but in title only, byway of a corporate resolution between MERS and NTC, giving BRYAN BLY the authority to sign as a Vice President of MERS, this is the full extent of BRYAN BLY's authority as a Vice President of MERS; BRYAN BLY is also the Vice President of over twenty (20) other banking or similar type financial institutions, *infra*;

43.     The MERS Assignment is Notarized by CRYSTAL MOORE, also a NTC employee and also an infamous "Robo-Signer";

44.     Subject Assignment, MERS as nominee for CHOICE, purports to convey, grant, sell, assign, transfer and set over Plaintiff's Mortgage, together with the NOTE to NATIONSTAR, however MERS is not the initial holder of the NOTE, and the record is barren as to any representation that MERS, as Assignor, was authorized by the NOTE-Holder CHOICE, to

assign the NOTE; considering CHOICE allegedly assigned the Mortgage and the NOTE to SUNTRUST byway of the subject ALLONGE; and,

45.        SUNTRUST, by and through Attorney of record has alleged Fannie Mae is the Owner of the NOTE; see Complaint paragraph three (3);

46.        In light of the foregoing, SUNTRUST, by and through attorney of record at the time, law offices of MARSHALL C. WATSON, P.A., is using its Superior-Knowledge, combined with trickery, to wrongfully foreclose on Plaintiff's property which does not comport with Florida law;

47.        Plaintiff herein initially relied on the allegations made by SUNTRUST, allegations contained in the subject Complaint, which caused financial injury to this Plaintiff by loss of a monthly income derived from the rental property, income used in part, to pay the Mortgage on the rental property; and as a direct and proximate cause of Defendants' wrongful act and misrepresentations created an environment whereby the property in question now stands vacant, interior of the home is substantially destroyed by vandals, making the property uninhabitable;

48.        Plaintiff comes to discover, on or about the 25th day of March 2011, Marshall Watson Esquire, the respondeat superior of the Firm which initiated the subject Civil-Circuit-Case, paid two million ($2,000,000.00) to

settle a Florida Attorney General investigation into questionable
foreclosure practices and suspicious document execution policies;

49.        However, that settlement did not clean up Marshall Watson

Esquire's practice enough to fend off a new set of accusations by the

Florida Bar. Subsequently the Bar released a 12-page guilty plea for a

consent judgment with Marshall C. Watson Esquire;

50.        MARSHALL C. WATSON, Esquire, agreed to plead guilty to

unlawful and unethical practices discovered during said Florida Bar

investigation, agreed to a suspension of more than 90 days, which

ordinarily would have resulted in said Firm shutting down; however,

51.        The law offices of MARSHALL C. WATSON, P.A., did not shutter

its doors, rather re-named the Firm CHOICE LEGAL GROUP, P.A.;

52.        MARSHALL C. WATSON Esquire, is no longer the respondeat

superior of that Firm, his brother is, JOHN WATSON who is also an

Esquire; acquired the subject Civil-Circuit-Case, under the new name of

CHOICE LEGAL GROUP P.A., remained in the same facility and

contemporaneously retained all the employees which were previously

employed by the law offices of MARSHALL C. WATSON, P.A., less

MARSHALL C. WATSON Esquire, for at least the following 90 days;

53.        Subsequently SUNTRUST is substituted by NATIONSTAR as the party Plaintiff in the Civil-Circuit-Case on the 24th day of May 2011; see the MERS assignment, Exhibit "C" hereto attached;

54.        On the 9th day of December 2011 SUNTRUST did cause to be delivered to this Plaintiff, by United States Postal Service, a "Hello" letter notifying Plaintiff that NATIONSTAR has Assigned, Sold or Transferred the Servicing rights to Plaintiff's Mortgage-Loan, set over same to Defendant SUNTRUST, effective date as of December 1st 2011; see Compilation of Exhibit "D" hereto attached and incorporated herein by reference;

55.        NATIONSTAR was substituted as the party Plaintiff in the Civil-Circuit-Case on the 24th day of May 2011, was also the Servicer, however there is no evidence in the Civil-Circuit-Case to show Defendant SUNTRUST's alleged agency relationship with Fannie Mae, prior to stepping-aside and NATIONSTAR's substitution as the party Plaintiff;

56.        Within the four-corners of the Civil-Circuit-Case, the initial Plaintiff SUNTRUST did not legally or procedurally invoke the jurisdiction of that Court by failing to establish its Standing upon commencement, in part because SUNTRUST failed to prove its agency relationship with Fannie Mae;

57.        SUNTRUST stepped aside and NATIONSTAR became the

substituted party Plaintiff, pursuant to an assignment from MERS acting in

the capacity as nominee for CHOICE;

58.        On the 24th day of May 2011, by the Court's ORDER

SUBSTITUTING PARTY PLAINTIFF, NATIONSTAR is judicially

substituted as the party Plaintiff; see Compilation of Exhibit "E" hereto

attached and incorporated herein by reference; then,

59.        During a Court Ordered Case Management Conference

(hereinafter "CMC"), held on the 25th day of July 2013, CHOICE LEGAL

GROUP, P.A., f/k/a The law offices of MARSHALL C. WATSON, P.A., is

substituted by the law office of STOREY LAW GROUP P.A., the present

law firm prosecuting the Civil-Circuit-Case, represented by Attorney of

record, Suzanne V. Delaney, Esquire; and,

60.        The newly substituted attorney of record with STOREY LAW

GROUP, P.A., during the subject CMC Hearing, moved for and substituted

SUNTRUST MORTGAGE INC, in the Civil-Circuit-Case for CHRISTIANA

TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB,

AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES

2012-13 (hereinafter "CHRISTIANA TRUST"); see Plaintiff's Compilation of

Exhibit "F" hereto attached and incorporated herein by reference;

61.       CHRISTIANA TRUST is judicially substituted for SUNTRUST as the party Plaintiff in the Civil-Circuit-Case; however, NATIONSTAR was initially substituted for SUNTRUST on the 24th of May 2011, two years earlier; see Plaintiff's Exhibit "E" hereto attached;

62.       SUNTRUST, on the 25th day of July 2013 is without right, title or interest as the Plaintiff, because NATIONSTAR legally [sic] and procedurally holds the status as that of the Plaintiff as of the 24th of May 2011;

63.       If CHRISTIANA TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, or STANWICH MORTGAGE LOAN TRUST SERIES 2012-13, actually acquired Plaintiff's consumer debt obligation or credit transaction (Mortgage-NOTE), did so during a foreclosure proceeding, as such changes the legal status of CHRISTIANA TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, and STANWICH MORTGAGE LOAN TRUST SERIES 2012-13, to that of a debt buyer or debt collector, subject to the Federal FAIR DEBT COLLECTION PRACTICES ACT (hereinafter "FDCPA"), by operation of law;

64.       As a debt buyer or debt collector, CHRISTIANA TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, nor STANWICH MORTGAGE LOAN TRUST SERIES 2012-13, is found to be registered with the Secretary of State, for the State of Florida; furthermore,

65.        CHRISTIANA TRUST, if it actually does exist, is a legal fiction found only within the corporate structure of WILMINGTON SAVINGS FUND SOCIETY, FSB; and the named entity known as CHRISTIANA TRUST is not a legally recognizable entity within the State of Florida, not under its laws;

66.        WILMINGTON SAVINGS FUND SOCIETY, FSB, operates as a subsidiary of WSFS Financial Corporation, a foreign, unregistered entity;

67.        STANWICH MORTGAGE LOAN TRUST SERIES 2012-13, is a non-existent phantom entity, a ghost, represented by and through STOREY LAW GROUP P.A., with Attorney of record Suzanne V. Delaney, Esquire;

68.        Plaintiff, on or shortly after the 9th day of May 2013, received a written communication from an entity titled CARRINGTON MORTGAGE SERVICES LLC (hereinafter "CARRINGTON"), it just appears one day and unilaterally alleges it is substituting its authority to collect payment from this Plaintiff; contemporaneously offers Plaintiff in part, Loan Modification, Repayment Plan, Special Forbearance, Short Sale, Deed in lieu of Foreclosure; and contained within said communication is a "MINI MIRANDA" warning, that CARRINGTON is a debt collector; see Plaintiff's Compilation of Exhibit "G" hereto attached and incorporated herein by reference;

69.        In response to said written communication from CARRINGTON, dated 9th day of May 2013, Plaintiff caused to be mailed, by United States

Postal Service, (hereinafter "USPS"), Certified Mail Number, 7009 2820 0001 5147 8765, a Request for Validation, dated 15th of May 2013, addressed to JOSE JUAREZ, c/o CARRINGTON, see Plaintiff's Compilation of Exhibit "H" hereto attached and incorporated herein by reference; CARRINGTON to date has not Validated the alleged debt;

70.        Defendant CARRINGTON did receive and accept a second request for Validation July 29th 2013, USPS Certified Mail Number, 7009 2820 0001 5147 8857, to date CARRINGTON has not Validated the alleged debt; see Plaintiff's Compilation of Exhibit "I" hereto attached and incorporated herein by reference; and,

71.        CARRINGTON did receive and accept a third request for Validation October 29th 2013, to date CARRINGTON has not Validated the alleged debt; see Plaintiff's Compilation of Exhibit "J" hereto attached and incorporated herein by reference;

72.        On the 29th day of July 2013 the law office of STOREY LAW GROUP P.A., with Attorney of record Suzanne V. Delaney, Esquire did receive and accept a Request for Validation from Plaintiff, USPS Certified Mail Number, 7009 2820 0001 5147 8840, to date STOREY LAW GROUP P.A. has not Validated the alleged debt, see Plaintiff's Compilation of Exhibit "K" hereto attached and incorporated herein by reference;

73.        On the 29th day of July 2013 CHRISTIANA TRUST, A DIVISION

OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR

STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13 , did receive

and accept a Qualified Written Request (hereinafter "QWR"), USPS

Certified Mail Number, 7009 2820 0001 5147 8864, to date has not

provided the documents requested, has ignored the request; see Plaintiff's

Compilation of Exhibit "L" hereto attached and incorporated herein by

reference;

## COUNT I.
## FRAUD UPON THE COURT

74.        Plaintiff re-alleges and affirms paragraph 17 through and

including paragraph 73 of this Complaint and incorporate same here as if

alleged anew.

75.        The Civil-Circuit-Case commenced by and through MARSHALL

C. WATSON, Esquire, BAR / BOND number 365505, by and through the

law office of MARSHALL C. WATSON, P.A;

76.        In March 2011, Marshall Watson paid two million dollars to

settle a Florida Attorney General investigation into questionable foreclosure

practices and suspicious document execution policies; subsequently, the

Florida Bar released a 12-page guilty plea for consent judgment with

Marshall C. Watson Esquire; see Compilation of Exhibit "M" hereto attached and incorporated herein by reference;

77.        The settlement with the Florida Attorney General did not require MARSHALL C. WATSON, P.A., to notify any court or any homeowner of any misconduct, false allegation or falsified document;

78.        In the official records of every one of the sixty-seven (67) Florida counties there are mortgage assignments with false information, signed by lawyers from the MARSHALL C. WATSON, P.A. firm;  These mortgage assignments were used and will continue to be used so that banks can foreclose;

79.        Found in the Civil-Circuit-Case at issue, MARSHALL C. WATSON, P.A. orchestrated the fabrication of a fraudulently Robo-Signed assignment and a void ALLONGE presented same to the Court as *prima facie* evidence;

80.        The assignment is fabricated from whole-cloth by and through Nationwide Title Clearing, which employs Bryan Bly, the person who executed the assignment in question, and employs the Notary, Crystal Moore, who Notarized the subject assignment;

81.        Bryan Bly is possibly the most infamous Robo-Signer in America; testified on the 4th day of November 2010, he signs on average

five-thousand financial documents a day, without reading them, which includes this Plaintiff's MERS assignment at issue;

82.        Bryan Bly testified to signing assignments as Vice President for such companies as JPMorgan Chase, Wells Fargo Bank, City Residential Lending and perhaps twenty (20) more different banks which would include being a Vice President of MERS, and others he could not remember;

83.        Bryan Bly testified he does not prepare the assignments he signs nor does he know if the information contained in the assignment is correct, or not; his main function is to actually hand sign a wet ink signature; in other words, execute the assignment(s) in front of him;

84.        Bryan Bly when asked what an assignment of Mortgage is, replied, "*I'm not really sure*";

85.        Bryan Bly testified the Notary Crystal Moore may, or may not have actually witnessed his written signature as the document was being executed; as the Notary was not always present during the execution;

86.         The subject assignment found in the Civil-Circuit-Case is a Form fabricated to convince the Defendant in the Civil-Circuit-Case, a debt is due and owing to the named Grantee, a Holder-in-Due Course; however the assignment fails, *prima facie*; as MERS the initial Mortgagee, assigned and transferred the subject Mortgage and the NOTE, set over same to

Defendant NATIONSTAR MORTGAGE LLC, on the 8th day of December 2010, acquired the subject debt during a foreclosure proceeding, means NATIONSTAR is not a "Holder-in-Due Course" as that term is defined, is a debt collector by operation of law;

87.       Furthermore, there is no nexus between the Lender and the apparent successor, SUNTRUST; which is remedied by fabricating an ALLONGE, docketed on the 28th day of September 2011;

88.       The ALLONGE which is not dated reads in part, *"Pay to the order of SUNTRUST MORTGAGE, INC., without recourse, all of its/his/her rights, title and interest in and to the attached Note dated FEBRUARY 25, 2008..."* however the ALLONGE is not attached to the NOTE, *ab initio*;

89.       The ALLONGE is allegedly executed by CHOICE MORTGAGE BANK, A FLORIDA CORPORATION, as Grantor, signed or executed by JOHN MALDONADO, as an Agent thereof;

90.       Defendant JOHN MALDONADO and ISGN know they are not an authorized Agent of CHOICE MORTGAGE BANK, as falsely alleged, as Defendant JOHN MALDONADO is an employee of ISGN, and is a Robo-Signer;

91.       SUNTRUST MORTGAGE INC., by and through the law office of MARSHALL C. WATSON P.A., knowingly deceived the trial Court in the

Civil-Circuit-Case by fabricating a voidable assignment which is Robo-Signed by Bryan Bly, and Notarized by Robo-Signer Crystal Moore; and fabricated a void ALLONGE, which is also Robo-Signed by Defendant JOHN MALDONADO, allegedly transferred Plaintiff's Mortgage-NOTE twice by the same Grantor, CHOICE, whereby the allegation found in the subject Civil-Circuit-Case identifies the Owner of the NOTE as Fannie Mae;

92.     MARSHALL C. WATSON Esquire, by and through law office of MARSHALL C. WATSON P.A., knowingly represented a void ALLONGE to the Clerk of Court, in the Civil-Circuit-Case, in order to create the false belief SUNTRUST had standing as an Agent for Fannie Mae, *ab initio*, in an attempt to collect a over due debt, allegedly owed to Fannie Mae, except the ALLONGE does not appear until four-hundred-and-twenty-one (421) days after MARSHALL C. WATSON P.A. docketed the ORIGINAL NOTE on the 3rd day of August 2010;

93.     The subject MERS' assignment is executed on the 8th day of December 2010, which is exactly one year post-commencement;

94.     Both financial instruments, namely the assignment and the ALLONGE were fabricated to knowingly  create a false belief, that a creditor is attempting to collect a debt owed to said creditor, when in fact SUNTRUST, NATIONSTAR and CHRISTIANA TRUST, acquired

Plaintiff's Mortgage-NOTE after it was declared to be in default, *ergo*, SUNTRUST, NATIONSTAR and CHRISTIANA TRUST is either a debt buyer or debt collector, collecting an alleged defaulted debt;

95.         Defendants MARSHALL C. WATSON Esquire, as respondeat superior, by and through law office of MARSHALL C. WATSON P.A., engaged the cooperation of Defendants SUNTRUST MORTGAGE INC., NATIONSTAR MORTGAGE LLC., ISGN FULFILLMENT SERVICES INC, and JOHN MALDONADO, to commit a Fraud-upon-the-Court in the Civil-Circuit-Case, knowingly and intentionally, fabricated a stand-alone, separate piece of paper titled ALLONGE TO NOTE, thereafter Robo-Signed same;

96.         Defendant SUNTRUST, by and through Defendants MARSHALL C. WATSON Esquire, as respondeat superior, by and through law office of MARSHALL C. WATSON P.A., knowingly fabricated a wrongful *prima facie* foreclosure action;

97.         Post commencement, 8th day of August 2010, the MERS assignment is fabricated to memorialize an alleged transaction, the sale and transfer of the subject Mortgage-NOTE from the Lender set over to NATIONSTAR;

98.         NATIONSTAR on the 24th day of May 2011 is substituted as the Plaintiff in the Civil-Circuit-Case; however,

99.        The subject ALLONGE appears, docketed on or shortly after the

28th day of September 2011;

100.        The subject ALLONGE purports to set over Plaintiff's Mortgage-

NOTE for a second time from the Lender now to SUNTRUST, obviously

Defendant SUNTRUST, by and through Defendant MARSHALL C.

WATSON Esquire, as respondeat superior, by and through law office of

MARSHALL C. WATSON P.A., knew, or should have known one of these

two aforementioned transactions did not, could not have occurred, is a

fraud upon the Court, *prima facie*;

101.        Service of Process upon the tenant caused Plaintiff's tenant to

abandon the subject rental property, which permitted vandals to enter the

vacant dwelling, literally destroying the interior of the home, making the

property uninhabitable, preventing the real-estate from being rented, thus

costing Plaintiff the rental income derived there-from, damaged the Plaintiff

financially, making it impossible for the Plaintiff to pay the Mortgage.


**WHEREFORE, PREMISES CONSIDERED**, Plaintiff directs this Court for entry of

judgment against Defendants MARSHALL C. WATSON Esquire, as

respondeat superior, by and through law office of MARSHALL C. WATSON

P.A., n/k/a CHOICE LEGAL GROUP P.A., SUNTRUST MORTGAGE INC.,

NATIONSTAR MORTGAGE LLC, CHRISTIANA TRUST, A DIVISION OF

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR

STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, ISGN

FULFILLMENT SERVICES INC, and JOHN MALDONADO, jointly or

severally for Fraud upon the Court; award Plaintiff treble damages,

compensatory damages, damages for mental distress, involuntary suffering,

award Plaintiff the lost rental income, prejudgment costs, punitive damages,

post judgment interest, and other costs and fees in an amount Trier of fact

deems is just and fair, determined at Trial.

## Count II.
## WRONGFUL FORECLOSURE ACTION
## BY A DEBT COLLECTOR
## VIOLATION OF 15 USC 1692e § 807

102.      Plaintiff re-alleges and affirms paragraph 17 through and

including paragraph 101 of this Complaint and incorporate same here as if

alleged anew.

103.  § 807.  False or misleading representations.

> A debt collector may not use any false, deceptive, or
> misleading representation or means in connection with
> the collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a
> violation of this section:

§ 807(2) The false representation of—

      (A)      the character, amount, or legal status of any debt;

104.      The present party Plaintiff [sic], CHRISTIANA TRUST, A

DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS

TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13,

(hereinafter "CHRISTIANA TRUST") is a debt buyer or debt collector, as was

SUNTRUST and NATIONSTAR, by operation of law, which changes the

character or legal status of the debt misconstrued in the Civil-Circuit-Case;

105.      In light of the mature nature of the Mortgage and NOTE at the

time of assignment, (SUNTRUST lack of nexus, but accepting the MERS

assignment to NATIONSTAR as valid) means none of the party assignees

is entitled to protection as a Holder-in-Due-Course of the instruments sued

upon, even if the party Plaintiff was in actual possession at the time of the

assignment;

106.      The general rule governing this factual situation appears to be;

negotiable paper which is overdue carries on its face notice of infirmities

and defects, and one who takes a negotiable instrument after its maturity

ordinarily is not entitled to protection as a Holder, but occupies the status

of an Assignee of a chose in action, or the Holder of a non-negotiable

instrument [sic], is subject to defenses based on infirmities in the

instruments or defects in the title of the person transferring it;

107.    From the foregoing principle it appears that the Assignee of
defaulted negotiable paper occupies the status of the Holder of a non-
negotiable instrument, as to those occupying this status, the rule appears to
be; there cannot be a Holder-in-Due-Course of a non-negotiable instrument,
and the doctrine of protecting a bona fide Holder for value without notice and
before maturity does not apply, no matter how widely or how narrowly the
instrument may miss being negotiable or how the parties themselves may
have regarded the instrument;

108.    This concept is codified in §673.3021(1)(b)(3) which defines a
Holder-in-Due-Course as one who takes an instrument *"Without notice that
the instrument is overdue or has been dishonored or that there is an uncured
default with respect to payment of another instrument issued as part of the
same series."*

> **"The purchaser of a nonnegotiable instrument is a mere assignee. His
> position is the same as that of his assignor, whether he holds by
> assignment or indorsement. He receives only such rights or title as the
> assignor possessed and ordinarily takes title subject to all equities and
> defenses which would be available as between the original parties or which
> could be urged against the payee and his assignor, even though he is given
> the right to sue in his own name."**
> Guaranty Mortg. & Ins. Co., v. Harris, 182 So. 2d 450, 453 (1st DCA 1966).

109.    It is common knowledge or a prudent practice, coming from a
business person involved with finance, when an investment is made in a
financial instrument which is in default, *ab initio*, the debt buyer is <u>NOT</u>

going to pay one-hundred-cents on the dollar for a high risk investment, like defaulted negotiable paper;

110.        Pursuant to *lex Anastasiana* §369, *"A law providing that a person purchasing a debt from the original creditor for less than its nominal value was not entitled to recover from the debtor more than the amount paid with lawful interest"*;

111.        Plaintiff commanded to know what is due and owing, [Request for Validation] and what is due and owing is the actual consideration CHRISTIANA TRUST exchanged for Plaintiff's alleged debt, plus usual and customary interest. It was incumbent upon CHRISTIANA TRUST to provide some admissible evidence showing the consideration it exchanged for Plaintiff's alleged debt, so the books can be balanced;

112.        Plaintiff herein has made four (4) individual written requests to the various aforementioned Defendants, in order to have this alleged debt validated, the subject of the foreclosure action in the Civil-Circuit-Case, Validated pursuant to 15 U.S.C. 1692g; See Compilation of Exhibit "H," "I," "J," and "K," hereto attached and incorporated herein by reference;

113.        CHRISTIANA TRUST, CARRINGTON and the law offices of STOREY LAW GROUP P.A., either can not, or has willfully refused to Validate the alleged Debt;

114.      In light of the fact the Principal has stood silent when there is a duty to Validate the alleged debt, is fraud by silence when there is a duty to speak; see U.S. v. Tweel, 550 F2d 997, 299-300; however,

115.      The Complaint served on or about the 19th day of January 2010 affirmatively averred this Plaintiff owes a sum certain of $119,766.65 together with interest, late charges and cost of collection;

116.      The actual amount Plaintiff owes has never been validated nor is it documented in a manner that would permit an audit; validation from the accounts receivable ledger found contained in the books and records of the Principal, whereby disclosing the true nature of the debt, its character and the actual amount;

//

//

//

//

//

//

//

//

//

117.      STOREY LAW GROUP P.A., knows, or should have known the

Plaintiff in the Civil-Circuit-Case is a debt buyer or debt collector, subject to

the FCCPA and the FDCPA, is not a Creditor [2], is not a Lender or Holder

as falsely alleged, changes the character or legal status of the debt;

---

[2] 15 USC 1692;

(3) The term "consumer" means any natural person obligated or allegedly
obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating
a debt or to whom a debt is owed, but such term does not include any person to
the extent that he receives an assignment or transfer of a debt in default solely
for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to
pay money arising out of a transaction in which the money, property, insurance,
or services which are the subject of the transaction are primarily for personal,
family, or household purposes, whether or not such obligation has been
reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of
interstate commerce or the mails in any business the principal purpose of which
is the collection of any debts, or who regularly collects or attempts to collect,
directly or indirectly, debts owed or due or asserted to be owed or due another.
Notwithstanding the exclusion provided by clause (F) of the last sentence of this
paragraph, the term includes any creditor who, in the process of collecting his
own debts, uses any name other than his own which would indicate that a third
person is collecting or attempting to collect such debts. For the purpose of
section 1692f (6) of this title, such term also includes any person who uses any
instrumentality of interstate commerce or the mails in any business the
principal purpose of which is the enforcement of security interests. The term
does not include—

(F) any person collecting or attempting to collect any debt owed or due or
asserted to be owed or due another to the extent such activity

(ii) concerns a debt which was originated by such person;

(iii) concerns a debt which was not in default at the time it was obtained by such
person;

118.     The Principal, in the Civil-Circuit-Case either can not, or has willfully refused to Validate the debt after four (4) such requests, means that this inquiry left unanswered is intentionally misleading, also displays a pattern or practice;

119.     In light of the foregoing, Defendants, *supra*, are actually debt buyers or debt collectors subject to the FCCPA or the FDCPA, are not Creditors, were not entitled to foreclose on Plaintiff's Mortgage *ab initio*, but have attempted to foreclose on Plaintiff's Mortgage, which is an *ultra virus* act, caused a financial injury to Plaintiff;

120.     If not for Defendants SUNTRUST, NATIONSTAR, MARSHALL C. WATSON Esquire, as respondeat superior, the law office of MARSHALL C. WATSON P.A., n/k/a CHOICE LEGAL GROUP P.A., CHRISTIANA TRUST, CARRINGTON and the law offices of STOREY LAW GROUP P.A., misrepresenting the character or legal status of the debt, or the amount of the debt, in part by standing silent when it has a duty to speak, and as such Plaintiff herein has suffered a financial injury, in part, by having a rental property literally destroyed and the loss of income from said property;

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff directs this Court for entry of judgment against Defendants SUNTRUST MORTGAGE INC, NATIONSTAR MORTGAGE, LLC, MARSHALL C. WATSON Esquire, as

respondeat superior, the law office of MARSHALL C. WATSON P.A.,

n/k/a CHOICE LEGAL GROUP, CHRISTIANA TRUST, A DIVISION OF

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR

STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13,

CARRINGTON MORTGAGE SERVICES, LLC, and the law office of

STOREY LAW GROUP P.A., jointly or severally for violation of 15 U.S.C.

1692e § 807(2)(A), false or misleading representations; award Plaintiff

compensatory damages, award Plaintiff punitive damages for mental

distress, involuntary suffering, further award Plaintiff the lost rental

income, prejudgment costs, post judgment interest, and other costs and

fees in an amount Trier of fact deems is just and fair, determined at Trial.

## COUNT III.
## VIOLATION OF 15 USC 1692j § 812

121.      Plaintiff re-alleges and affirms paragraph 17 through and

including paragraph 120 of this Complaint and incorporate same here as if

alleged anew.

122.  § 812(a)  It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

123.  Defendants SUNTRUST, NATIONSTAR, JOHN MALDONADO, ISGN, "MARSHALL C. WATSON Esquire, as respondeat superior, the law office of MARSHALL C. WATSON P.A., n/k/a CHOICE LEGAL GROUP, P.A.," (hereinafter "WATSON FIRM"), participated in fabricating a form, knowing such a form would create a false belief in Plaintiff as to being contractually obligated to said Creditor, attempting to collect their own debt;

124.  The initial Complaint is a Form designed to create the false belief Plaintiff was indebted to a Creditor, namely SUNTRUST, which concedes in the body of the Complaint it is not the Real-Party-in-Interest; furthermore,

125.  Defendant WATSON FIRM, presented the Complaint with attached sundry documents identifying SUNTRUST MORTGAGE, INC as the Creditor to whom the debt is owed, which is a misrepresentation of a material fact and is contrary to the disclosure contained in the body of the pleading, creating a false belief in Plaintiff as to being contractually

obligated to said Creditor, namely SUNTRUST, whereby it is actually attempting to collect a debt for a third party;

126.     The NOTICE OF FILING, dated 3rd of August 2010, whereby the WATSON FIRM, docketed the "ORIGINAL NOTE" which contains a stamp that reads PAY TO THE ORDER OF, indorsed by SUNTRUST, is a Form fabricated to create a false belief Plaintiff is contractually obligated to a Creditor, namely SUNTRUST, a Servicer, whereby it is attempting to collect a debt for a third party, is not actually the Principal;

127.     The MERS assignment allegedly transferring Plaintiff's Mortgage and NOTE, is a Form fabricated by SUNTRUST, to create a false belief in Plaintiff as being contractually obligated to a Creditor, namely NATIONSTAR, whereby it is attempting to collect a debt for a third party, as NATIONSTAR is a third party debt collector falsely appears as the Principal, whereby it is actually attempting to collect a debt for Fannie Mae, pursuant to the allegation contained within the Complaint;

128.     The document titled; ALLONGE TO NOTE, requisitioned by the WATSON FIRM, fabricated by ISGN, indorsed by JOHN MALDONADO, as Agent for CHOICE MORTGAGE BANK, is a Form designed knowing it will create a false belief in Plaintiff and the Court that SUNTRUST MORTGAGE, INC., is a Creditor; Form is docketed with the Clerk of Court

on the 28th day of September 2011, as the ORIGINAL ALLONGE TO NOTE, see Exhibit "B" hereto attached;

129.    The subject undated ALLONGE[3] is docketed as a separate stand alone document six-hundred-and-seventeen (617) days after docketing the initial Complaint; and is four-hundred-and-twenty-one (421) days after the Plaintiff docketed the ORIGINAL NOTE with the Clerk of Court, in the Civil-Circuit-Case;

130.    The Form titled, ALLONGE TO NOTE is fabricated from whole-cloth, whereby the WATSON FIRM knowingly requisitioned the fabricated form to create a false belief in Plaintiff and the Court, that the creditor of the Plaintiff herein is attempting to collect a debt Plaintiff owes to the creditor SUNTRUST, whereby the WATSON FIRM concedes SUNTRUST is the Servicer, is a third party debt collector, attempting to collect a debt for Fannie Mae; furthermore,

---

[3] Courts have held that "stapling is the modern equivalent of gluing or pasting." *See* Lamson v. Commercial Cred. Corp., 187 Colo. 382 (Colo. 1975). *See also* Southwestern Resolution Corp. v. Watson, 964 S.W. 2d 262 (Texas 1997)(holding that an ALLONGE stabled to the back of a promissory note is valid so long as there is no room on the note for endorsement but affixed *does not* include paperclips.). Regardless of the exact method of affixation, numerous cases have rejected indorsements made on a separate sheet of paper loosely inserted into a folder with the instrument and not physically attached in any way. *See* Town of Freeport v. Ring, 1999 Me. 48 (Maine 1999); Adams v. Madison Realty & Development, Inc., 853 F. 2d 163 (3d Cir. 1988); Big Builders, Inc. v. Israel, 709 A. 2d 74 (D.C. 1988).

131.      SUNTRUST can not show it had standing upon commencement, considering the ALLONGE is a void document *prima facie,* as it is not dated or authenticated nor permanently affixed to the ORIGINAL NOTE; and as such was a wrongful foreclosure action, *ab initio.*

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff directs this Court for entry of judgment against Defendants SUNTRUST MORTGAGE INC, NATIONSTAR MORTGAGE, LLC, JOHN MALDONADO, ISGN FULFILLMENT SERVICES INC, MARSHALL C. WATSON Esquire, as respondeat superior, the law office of MARSHALL C. WATSON P.A., n/k/a CHOICE LEGAL GROUP, P.A., jointly or severally for violation of 15 U.S.C. 1692e § 812(A), furnishing a form knowing that such form would be used to create the false belief in Plaintiff that a creditor is attempting to collect a debt that Plaintiff owes to said creditor, when in fact and by operation of law, the alleged creditor is actually a third party debt collector or debt buyer; as such award Plaintiff compensatory damages, award Plaintiff punitive damages for mental distress, involuntary suffering, and award Plaintiff the lost rental income, prejudgment costs, post judgment interest, and other costs and fees in an amount Trier of fact deems is just and fair, determined at Trial.

## COUNT IV.
## VIOLATION OF THE FEDERAL
## FAIR DEBT COLLECTION PRACTICES ACT

132.      Plaintiff re-alleges and affirms paragraph 17 through and

including paragraph 131 of this Complaint and incorporate same here as if

alleged anew.

133.      The Federal FAIR DEBT COLLECTION PRACTICES ACT

(hereinafter "FDCPA"), the Act covers personal, family, and household debts,

including money owed on a Mortgage;

134.      When the Civil-Circuit-Case was initiated by SUNTRUST, by and

through the  WATSON FIRM, a form was attached to the Complaint

informing the Defendant (Plaintiff herein), NOTICE REQUIRED BY THE

FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. SECTION 1692, AS

AMENDED, see Compilation of Exhibit "N" hereto attached and incorporated

herein by reference;

135.      When CARRINGTON MORTGAGE SERVICES, LLC, first

appeared by written communication, under the veil of helping the

Borrower avoid foreclosure by offering Plaintiff, Loan Modification,

Repayment Plan, Special Forbearance, Short Sale, Deed In Lieu Of

Foreclosure, included a Mini Miranda warning, to wit; *"This communication*

*is from a debt collector and it is for the purpose of collecting a debt and*

*any information obtained will be used for that purpose. This notice is*

*required by the provisions of the Fair Debt Collection Practices Act…*

"Letter is dated May 9th 2013; See Exhibit "G."

136.      In response to the aforementioned letter, Plaintiff caused to be

mailed a Request for Validation, on the 15th day of May 2013, USPS certified

mail, return receipt requested number 7009 2820 0001 5147 8765 ; see

Compilation of Exhibit "H" hereto attached;

137.      CARRINGTON MORTGAGE SERVICES LLC, did not respond to

the aforementioned request;

138.      A Case Management Conference (hereinafter "CMC") was held

on the 25th day of July 2013 in reference to the Civil-Circuit-Case;

139.      During the aforementioned CMC Hearing the senior presiding

Judge signed an ORDER ON MOTION TO SUBSTITUTE PARTY

PLAINTIFF, whereby SUNTRUST was substituted (in error, as

NATIONSTAR is the Plaintiff at this time) for CHRISTIANA TRUST, A

DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS

TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13,

as the Plaintiff in the Civil-Circuit-Case by and through its newly substituted

counsel STOREY LAW GROUP P.A., [see Exhibit "F"] instituted

CARRINGTON MORTGAGE SERVICES, LLC as its Servicer; and as such,

140.        Plaintiff caused to be mailed a Request for Validation, pursuant to

15 U.S.C. 1692g Section 809, to Suzanne V. Delaney, attorney of record

from the firm STOREY LAW GROUP P.A., and to CARRINGTON

MORTGAGE SERVICES, LLC, on the 26th day of July 2013; furthermore,

141.        Plaintiff caused to be mailed, also on the 26th day of July 2013, a

Qualified Written Request (hereinafter "QWR") to the substituted party

Plaintiff, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS

FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN

TRUST, SERIES 2012-13, (hereinafter "CHRISTIANA TRUST"), see Exhibit

"L" hereto attached;

142.        On or shortly after the 30th day of July 2013, Plaintiff did receive a

preliminary response in reference to the Request for Validation from

CARRINGTON MORTGAGE SERVICES, LLC, stating in part as follows;

> You are receiving this correspondence as the Customer
> Service Research Department of Carrington Mortgage
> Services, LLC ("CMS") has received your inquiry regarding
> the above-referenced loan. Our records are currently being
> reviewed in an effort to address your concern(s), and you
> will be notified shortly of the results.

These aforementioned "results" are still forthcoming, see Compilation of

Exhibit "O" hereto attached and incorporated herein by reference;

143.        On or shortly after the 26th day of August 2013, Plaintiff did

receive an inappropriate response in reference to the Request for Validation

from STOREY LAW GROUP P.A., see Compilation of Exhibit "P" hereto

attached and incorporated herein by reference;

144.        Respondent, Edward A. Storey III, responds to the subject

request for validation, states in part as follows;

> We are in receipt of your letter, dated July 26, 2013, in
> which you dispute the validity of the debt described in the
> lawsuit styled Christiana Trust, A Division of Wilmington
> Savings Fund Society, FSB, as Trustee for Stanwich
> Mortgage Loan Trust, Series 2012-13. In response thereof,
> the following shall act as written validation and verification
> of the debt.

Plaintiff's Exhibit "P" hereto attached, in reference to Edward A. Storey III's

response, is not validation of the alleged debt, as the letter-head identifies

the law Firm of STOREY LAW GROUP P.A., as the respondent, not the

Principal, and the letter with the attached exhibits are not verified as alleged,

coming from the respondeat superior of the law firm STOREY LAW GROUP

P.A., in the business of debt collection; furthermore,

145.        It is rather curious that the copy of the "NOTE" attached to this

aforementioned letter from STOREY LAW GROUP P.A., does not contain

the SUNTRUST indorsement stamp on it; and,

146.        The alleged "ALLONGE TO NOTE" attached to this

aforementioned letter from STOREY LAW GROUP P.A., is NOT a copy of

the same ORIGINAL ALLONGE TO NOTE initially introduced and contained in the Civil-Circuit-Case, 28th of September 2011; therefore,

147.        On or shortly after the 29th day of October 2013 Plaintiff caused to be mailed a third request for validation (although the letter reads SECOND REQUEST FOR VALIDATION) mailed to Defendant CARRINGTON MORTGAGE SERVICES, LLC, the Servicer;

148.        This third Request for Validation is still in want of a response;

149.        A copy of the consumer credit contract (NOTE) is not sufficient to validate the debt; Validation requires presentment of the account and general ledger statement signed and dated by the party responsible for maintaining the account Pacific Concrete F.C.U. v. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980); GE Capital Hawaii, inc. v. Vonenaka, 25 P.3d 807, 96 Hawaii 32 (Hawaii App 2001); Fooks v. Norwich Housing Authority, 28 Conn. L. Rptr. 371, (Conn. Super.2000); Town of Brookfield v. Candlewood Shores Estates, inc., 513 A.2d 1218, 201 Conn. 1 (1986); and Solaon v. Godbole, 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 515 N.E. 2d 1045 (3 Dist. 1987).

150.        In order to establish a *prima facie* case for money owed on an account,

*"an account must show the name of the party charged and contain:*

*(1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due."* Gabriele v. Reagan (1988), 57 Ohio App.3d 84, 87, 566 N.E.2d 684, quoting Brown v. Columbus Stamping & Mfg. Co. (1967), 9 Ohio App.2d 123, 223 N.E.2d 373, paragraph three of the syllabus. *'An action upon an account may be proved by the introduction of business records showing the existence of the account.'* Wolf Automotive v. Rally Auto Parts, Inc. (1994), 95 Ohio App.3d 130, 137, 641 N.E.2d 1195. See, generally, Raymond Builders Supply, Inc. v. Slapnicker, 11th Dist. No.2003-A-0040, 2004-Ohio-1437, at ¶ 8. See CITIBANK, v. KOVACH. No. 09-CIV-0907, -- March 10, 2010.

151.       The aforementioned Defendants, CARRINGTON MORTGAGE SERVICES, LLC, STOREY LAW GROUP P.A., and CHRISTIANA TRUST, have all received a Request to Validate the Debt, accompanied by a request to Cease and Desist until the debt has actually been validated, have continued collection efforts, continued reporting unverifiable information to the Consumer Reporting Agency(s), without a notation

identifying the debt as "disputed," causing a financial injury to Plaintiff by

damaging Plaintiff's credit score;


**WHEREFORE, PREMISES CONSIDERED**, Plaintiff directs this Court for entry of

judgment against Defendants CARRINGTON MORTGAGE SERVICES,

LLC, STOREY LAW GROUP P.A., and CHRISTIANA TRUST, A DIVISION

OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR

STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, jointly or

severally for violation of 15 U.S.C. 1692g § 809, of the Federal Fair Debt

Collection Practices Act, a strict liability Statute, award Plaintiff up to One-

Thousand ($1,000.00) per statutory violation, four (4) separate instances

thereof, demonstrating a pattern and practice, regarding Requests for

Validation, and One-Thousand ($1,000.00) per statutory violation for each

collection effort thereafter in the form of pleadings or monthly invoices,

dunning letters and alike collection efforts; furthermore award Plaintiff

actual damages, prejudgment costs, post judgment interest, and other

costs and fees in an amount Trier of fact deems is just and fair, determined

at Trial.

## COUNT V.
## <u>VIOLATION OF FAIR CREDIT REPORTING ACT</u>
## 15 U.S.C. § 1681s-2(b)

152.      Plaintiff re-alleges and affirms paragraph 17 through and

including paragraph 151 of this Complaint and incorporate same here as if

alleged anew.

153.      Plaintiff's Exhibits "H", "I," "J" and "K" hereto attached, are four

(4) requests for Validation, three titled "DEBT COLLECTOR'S

ADMINISTRATIVE NOTICE OF CONDITIONAL ACCEPTANCE UPON

PROOF OF CLAIM / REQUEST FOR VALIDATION OF DEBT," mailed to

CARRINGTON MORTGAGE SERVICES, LLC, (hereinafter

"CARRINGTON"), STOREY LAW GROUP P.A., (hereinafter STOREY")

and is Notice to the alleged Principal CHRISTIANA TRUST, as Notice to

Agent is Notice to Principal, specifically Noticed within the Request for

Validation reads, in part as follows;


*** *Notice of Dispute of Validity of Alleged Debt;*

***Notice to Cease and Desist until information requested is provided;*

****SILENCE IS ACQUIESCENCE;*

Debt Collector's failure, both intentional and/or otherwise, in completing / answering fully, truthfully, and completely questions and requests for documentation in the annexed Disclosure Statement and returning the Disclosure Statement, as well as providing "Borrower" with the requisite verification documentation validating the hereinabove-referenced alleged debt, within thirty (30) days of its receipt, constitutes Debt Collector's tacit agreement that Debt Collector has no verifiable, lawful, bona fide claim regarding the hereinabove-referenced alleged account, and that Debt Collector tacitly agrees that Debt Collector waives all claims against alleged the Debtor "Borrower" and indemnifies and holds "Borrower" harmless against any and all costs and fees heretofore and hereafter incurred and related regarding any and all future collection attempts/actions involving the hereinabove-referenced alleged account.

NOTICE TO AGENT IS NOTICE TO PRINCIPAL<br>AND NOTICE TO PRINCIPAL IS NOTICE TO AGENT.

154.    Defendants CHRISTIANA TRUST, by and through CARRINGTON, are or have reported inaccurate financial information, known to be inaccurate financial information, as the debt appears to be unverifiable, reported to Consumer Reporting Agencies after reinvestigation is in violation of the FCRA;

155.    Defendants CHRISTIANA TRUST, by and through CARRINGTON, are reporting to Consumer Reporting Agencies, CARRINGTON appears as the creditor reporting a debt which is over due, owed to CARRINGTON, when in fact and by operation of law Defendant CARRINGTON is a debt collector, collecting a debt for a third party, a debt buyer, namely CHRISTIANA TRUST;

156.     Consumer Reporting Agencies accept financial information about the debtor from a Creditor, or an authorized representative;

157.     A creditor, as defined by the FCRA, is a company that furnishes information to a Consumer Reporting Agency; typically, these are creditors, with which a consumer has some sort of credit agreement (such as credit card companies, auto finance companies and mortgage banking institutions);

158.     Plaintiff does not have nor ever had a credit agreement with Defendants CHRISTIANA TRUST, or CARRINGTON; furthermore,

159.     The Consumer Reporting Agencies do not show this debt to be in dispute, which is a violation of the FCRA, as the debt is disputed, has always been disputed, and the debt collector is either unable, or unwilling to Validate the Debt;

160.     Under the FCRA when a Creditor, or a Debt Collector receives a Request for Validation, disputing a debt, it is a duty owed to the consumer to reinvestigate the debt and provide the consumer with a verified response validating the debt;

161.     Plaintiff's Exhibit "Y" hereto attached and incorporated herein by reference, indicates that Defendants CHRISTIANA TRUST, by and through CARRINGTON is reporting to Consumer Reporting Agencies that there is outstanding a balance of $121,500.00 due and owing to CARRINGTON,

composed of financial information, which may contain unauthorized or erroneous charges, but Defendants CHRISTIANA TRUST, by and through CARRINGTON or by and through STOREY LAW GROUP P.A., is either unable, or has refused to validate the alleged debt and disclose itemized charges that Plaintiff maybe unaware of and is therefore unable to audit same or affirm;

162.    Defendants CHRISTIANA TRUST, nor CARRINGTON is Plaintiff's Creditor by operation of law, but CARRINGTON [the Servicer] a debt collector is reporting that CARRINGTON is Plaintiff's Creditor, *prima facie*; see Exhibit "Y" hereto attached;

163.    Defendants CHRISTIANA TRUST, by and through CARRINGTON reporting unverifiable, inaccurate financial information concerning this Plaintiff is willful considering Plaintiff has requested STOREY, CHRISTIANA TRUST and CARRINGTON to validate the alleged debt on four (4) separate occasions, cumulatively, but the Principal continues to intentionally stand silent on the subject Request for Validation but continues to report unverifiable, inaccurate financial information, as true or correct, as undisputed; see § 1681s-2(b) reinvestigation duties;

164.    Defendant CHRISTIANA TRUST, if it actually acquired Plaintiff's debt did not pay one-hundred cents on the dollar, thus its internal account

receivable measured against its payable, the outstanding balance sought

herein is irreconcilable, unverifiable;

165.     Plaintiff's Credit Report indicates a debt is due and owing to

CARRINGTON, at all times relevant, as there is no mention of Fannie Mae,

is an intentional misrepresentation of a material fact;

166.     As a direct and proximate cause of the foregoing, Plaintiff suffers

from mental distress, experiences headaches presumptively from stress

related to the collection efforts of a trespasser, namely STOREY,

CHRISTIANA TRUST and CARRINGTON, debt collectors, pretending to be

a Creditor, reporting financial information to consumer reporting agencies

which appears to be unverifiable, because the alleged debt can not be

validated by a trespasser, a person without access to the general ledger, the

actual books and records.


**WHEREFORE, PREMISES CONSIDERED**, Plaintiff directs this Court for entry of

judgment against Defendants CARRINGTON MORTGAGE SERVICES, LLC,

STOREY LAW GROUP P.A., and CHRISTIANA TRUST, A DIVISION OF

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR

STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, individually, for

violation of the FCRA, award Plaintiff statutory damages of one-thousand

($1,000.00) for each month Defendant reported inaccurate financial information, multiplied by each Consumer Reporting Agency which reported the inaccurate financial information, award Plaintiff actual damages which is ongoing, damages for mental distress, prejudgment costs, post judgment interest, and other costs and fees in an amount Trier of fact deems is just and fair, determined at Trial.

## COUNT VI.
## CIVIL CONSPIRACY

167.     Plaintiff re-alleges and affirms paragraph 17 through and including paragraph 166 of this Complaint and incorporate same here as if alleged anew.

168.     In order for SUNTRUST to demonstrate Standing, in the Civil-Circuit-Case, by and through the WATSON FIRM, fabricated an ALLONGE, named Grantee is SUNTRUST, executed in its own name for its own benefit, however SUNTRUST concedes it is not the Real-Party-in-Interest;

169.     SUNTRUST has affirmatively alleged Fannie Mae is the Real-Party-in-Interest, see Exhibit "Z" hereto attached and incorporated herein by reference;

170.     Fannie Mae is, or at least was the Real-Party-in-Interest, at least at some point, and as such Fannie Mae should appear as Assignee \ Grantee somewhere in the Chain-of-Title, subsequently authorize its Servicer, by and through an agency agreement the authority to commence the Civil-Circuit-Case; however,

171.     In direct conflict with the notion Fannie Mae is the Principal, is reflected by the ALLONGE naming SUNTRUST, then on the other hand is the issue of the MERS ASSIGNMENT OF MORTGAGE, fabricated by NTC, executed post-commencement on the 8th day of December 2010, recorded 10th day of January 2011; MERS as the Nominee for CHOICE, grants, sells, assigns, transfers and set over Plaintiff's Mortgage, together with the NOTE to NATIONSTAR MORTGAGE LLC;  see Exhibit "Z" hereto attached;

172.     The undated ALLONGE purports to transfer the Mortgage-NOTE contains a special indorsement from CHOICE naming SUNTRUST MORTGAGE, INC., [the Servicer] as payee and beneficiary set over *"without recourse"* by the same Grantor found contained in the MERS Assignment, CHOICE;

173.     If the MERS' Assignment, *supra,* is taken as true and is a valid instrument, and the ALLONGE, *supra,* is taken as true and is a valid instrument, this is an act of Stellionation, a crime; as CHOICE can not sell

and assign thereafter transfer the same Mortgage-NOTE more than once to two different parties, nor did it;

174.    The subject undated ALLONGE is fabricated by Defendant ISGN, signed by an alleged "Robo-Signer" Defendant JOHN MALDONADO, alleges to hold an agency relationship with CHOICE MORTGAGE BANK, which is an intentional misrepresentation of a material fact, known to be a misrepresentation at the time those words is uttered, as neither Defendant ISGN nor JOHN MALDONADO is a registered Agent of CHOICE MORTGAGE BANK, at anytime relevant; and,

175.    The MERS assignment is a Robo-Signed document, *infra*;

176.    SUNTRUST by and through the law offices of MARSHALL C. WATSON, P.A., on the 3rd day of August 2010 docketed with the Clerk of Court the "ORIGINAL NOTE" in the Civil-Circuit-Case; however,

177.    At this time, 3rd day of August 2010, there is no nexus between the Lender, CHOICE MORTGAGE BANK and the initial Plaintiff, SUNTRUST in the Civil-Circuit-Case;

178.    To remedy the nexus issue brought to light by Defendant, SUNTRUST by and through the WATSON FIRM, on the 28th of September 2011 docketed with the Clerk of Court the "ORIGINAL ALLONGE TO NOTE" in the Civil-Circuit-Case, however the ORIGINAL

ALLONGE TO NOTE is not dated, not authenticated, nor is it firmly affixed

to the ORIGINAL NOTE, although there is plenty of white blank space

available on the ORIGINAL NOTE which could have easily

accommodated the Lender's stamp *ab initio*; however,

179.    The "ORIGINAL NOTE" was docketed with the Clerk of Court

on the 3rd day of August 2010 and it would be too obvious if an "updated

ORIGINAL NOTE" should appear now containing an additional stamp

indorsed by CHOICE MORTGAGE BANK;

180.    Irrespective of the foregoing paragraph, it is legally incumbent on

the Lender that its indorsed stamp appear first on the ORIGINAL NOTE, not

the Servicer's stamp indorsed, as a Servicer is merely an agent of its

Principal, has no right, title or interest in the NOTE, holds no legal authority to

indorse the ORIGINAL NOTE, and no such authority from Fannie Mae is

contained within the four corners of the Civil-Circuit-Case;

181.    Defendant WATSON FIRM docketed the subject ALLONGE,

fabricated from whole-cloth, after-the-fact, fabricated for the sole purpose

for SUNTRUST to appear to have Standing in the Civil-Circuit-Case, when

in fact MARSHALL C. WATSON Esquire knew, or later realized

SUNTRUST did not have standing upon commencement, requisitioned an

ALLONGE in order to trick the Court, in a legal attempt to take Plaintiff's

property, by the use of an illegal means, consequently financially damaged the Plaintiff, *supra*;

182.     Defendants ISGN and the WATSON FIRM knew or should have known it was engaged in fabricating a legal looking security instrument, the ALLONGE in question; fabricated knowing the subject ALLONGE TO NOTE will be used in a legal proceeding to trick persons or a Judge into believing something as true, when in fact ISGN and the WATSON FIRM, knows, or should have known is not true, because SUNTRUST is not the real beneficiary / payee of the subject NOTE, is merely a middle-man of sorts, whereby Fannie Mae is alleged to be the owner of the debt, *ab initio*;

183.     Defendant ISGN employs co-Defendant JOHN MALDONADO to do the deed, sign the subject ALLONGE as an "Agent for CHOICE MORTGAGE BANK," without CHOICE MORTGAGE BANK's knowledge or consent;

184.     In Florida a Servicer may foreclose on a defaulted Borrower / home-owner, if duly authorized or ratified by the Principal; Principal indorses the NOTE in blank and transfers the NOTE to the Servicer in order to conduct the foreclosure; but that is not what happened in this case;

185.     The record appears to show the MERS' Assignment appears on the 10th day of January 2011, is fabricated by NTC, wherein is allegedly MERS sold and assigned, subsequently set over Plaintiff's Mortgage-NOTE to NATIONSTAR; subsequently,

186.     NATIONSTAR MORTGAGE LLC is substituted as the Plaintiff in the Civil-Circuit-Case on the 24th day of May 2011; then,

187.     CHOICE MORTGAGE BANK sold and assigned, subsequently set over Plaintiff's Mortgage-NOTE to SUNTRUST vis-à-vis the ALLONGE, which first appears on or shortly after the 28th day of September 2011; because,

188.     Plaintiff herein notified Defendant SUNTRUST, by and through the WATSON FIRM, there is no nexus between the Lender and SUNTRUST, in the Civil-Circuit-Case, whereby SUNTRUST, by and through the WATSON FIRM fabricated a nexus, by and through the subject ALLONGE; whereby the path-of-least-resistance would appear to be, getting Fannie Mae to ratify the action; interestingly,

189.     The path-of-least-resistance, in the legal opinion of the WATSON FIRM appears to be the fabrication of legal looking documents;

190.     However these legal looking documents in conjunction with the Complaint, in the Civil-Circuit-Case, informs the Court of two material

issues, 1) the Lender has committed an act of Stellionation and 2) Fannie Mae is the actual owner of the NOTE on or before the 8th day of December 2009, date of commencement, means Plaintiff lacked standing in the absents of a ratification of commencement from Fannie Mae; and,

191.     Within the four corners of the Civil-Circuit-Case, Defendant WATSON FIRM, is informing the Court, CHOICE MORTGAGE BANK has committed an act of Stellionation, by transferring a one-hundred percent interest in Plaintiff's Mortgage-NOTE more than once to two different persons;

192.     If Fannie Mae is the owner of the NOTE, *prima facie* evidence to that effect is not contained within the four corners of the Civil-Circuit-Case; and if Fannie Mae is the owner of the NOTE, its authorization to execute the foreclosure action is not contained within the four corners of the Civil-Circuit-Case;

193.     At all times relevant, Defendant SUNTRUST, by and through the WATSON FIRM, ISGN and JOHN MALDONADO all acted together, fabricated an ALLONGE from whole-cloth, caused or directed others to commit the act, or permitted others to commit the act alleged; subsequently the ALLONGE is presented by the substituted party Plaintiff NATIONSTAR, by and through the law offices of MARSHALL C. WATSON, P.A., an officer

of the Court, knew, or should have known the subject ALLONGE is a void document, is inadmissible as a matter of law as a stand alone document, which is not dated or authenticated; but law offices of MARSHALL C. WATSON, P.A., knew without the subject ALLONGE the initial Plaintiff SUNTRUST would lack the appearance of Standing, presented the fabricated ALLONGE with the cooperation and assistance of a co-Defendant;

194.     The MERS assignment transferring Plaintiff's Mortgage and the NOTE, set over to NATIONSTAR appears to shift the liability to an innocent third party, but fails for the fact NATIONSTAR knowingly acquires the over due debt during a foreclosure proceeding, as a debt collector, however NATIONSTAR may not know its predecessor lacked standing, *ab initio,* and is transferring property it does not possess a beneficial interest in;

195.     This "colorable claim" by SUNTRUST, later NATIONSTAR is expressed as $119,766.65, plus interest, escrow *et cetera,* at that time;

196.     Defendants SUNTRUST, NATIONSTAR or its Principal did not acquire Plaintiff's over due debt for one-hundred cents on the dollar, but SUNTRUST, later NATIONSTAR by and through the WATSON FIRM, is suing Plaintiff for one-hundred cents on the dollar plus interest, escrow *et cetera,* while pretending to be a Creditor or representative thereof; and through it all Fannie Mae, the alleged actual owner of the NOTE never

makes an appearance or ratifies the proceeding; see Complaint paragraph three (3);

197.    Defendants SUNTRUST, later NATIONSTAR, the WATSON FIRM, ISGN, and JOHN MALDONADO are acting as the agent for each other, and Defendants acted within the scope of their agency as if acting as the agent of another;

198.    Knowing or realizing that others were engaging in or planning to engage in illegal conduct, each Defendant, SUNTRUST, later NATIONSTAR, THE WATSON FIRM, ISGN, and JOHN MALDONADO nevertheless facilitated the commission of this illegal act herein alleged;

199.    Defendants SUNTRUST, later NATIONSTAR, the WATSON FIRM, ISGN, and JOHN MALDONADO intended to and did encourage, facilitate or assist in the commission of this illegal act herein alleged, and thereby aided and abetted the other in the illegal conduct herein alleged;

200.    Defendants SUNTRUST, NATIONSTAR, the WATSON FIRM, ISGN, and JOHN MALDONADO engaged in an unfair and deceptive trade practice, fabricated a bogus ALLONGE, is a direct or proximate cause of Plaintiff's loss of income derived from the subject property, by serving the tenant with an infirm unverified foreclosure action, caused the tenant to abandon the subject property, and as a direct or proximate cause the

property was significantly damaged, thus injured the Plaintiff financially, and made it difficult if not impossible to defend against in the Civil-Circuit-Case, a foreclosure action, predicated on "Robo-Signed" fabricated legal looking document titled, ALLONGE TO NOTE;

201.    The knowingly Robo-Signed MERS assignment is also re-presentment to the Court, facilitated by Defendant the WATSON FIRM, and SUNTRUST later NATIONSTAR as the alleged beneficiary;

202.    The substitution of Counsel from the WATSON FIRM, to STOREY LAW GROUP, P.A., a successor debt collector, is done, presumptively, to shift focus away from the wrongdoing of the predecessor law firm; in other words, successor has plausible deniability;

203.    Irrespective of the foregoing the *prima facie* evidence shows Defendant STOREY LAW GROUP, P.A., a professional association knew, or should have known SUNTRUST lacked standing at commencement, by due diligence, as clearly there is no nexus between the Lender and SUNTRUST at commencement; and,

204.    Defendant CHRISTIANA TRUST, did not acquire Plaintiff's defaulted Mortgage-NOTE for one-hundred cents on the dollar, but CHRISTIANA TRUST, by and through CHOICE LEGAL GROUP P.A., is demanding one-hundred cents on the dollar; see *lex Anastasiana* §369;

205.     Each Defendant individually could not accomplish that which would require all aforementioned participants' cooperation in order for the scheme to accomplish the goal; in the Civil-Circuit-Case the fabrication of the ALLONGE is necessary in order to show Standing, to lawfully take Plaintiff's property, by the use of unlawful means, not unlike the MERS assignment recorded in the public domain, whereby NATIONSTAR is actually without legal right, title or interest in Plaintiff's Mortgage or NOTE, is actually a cloud on Plaintiff's title;

206.     At all times relevant each named Defendant committed an act, caused or directed an other to commit the act, or permitted an other to commit the act alleged in this Complaint;

207.     Defendants knowingly and intentionally combined, conspired, confederated or agreed together with other Defendants to corrupt, obstruct, influence and impede the legal proceeding in the Civil-Circuit-Case;

208.     Defendants acted as the agent for other Defendants, and all of the Defendants acted within the scope of their agency as if acting as the agent of another;

209.     Knowing or realizing that an other Defendant was engaging in or planning to engage in illegal conduct, each Defendant nevertheless facilitated the commission of the illegal act herein alleged;

210.     Each Defendant intended to and did encourage, facilitate or
assist in the commission of the illegal act herein alleged, and thereby aided
and abetted the other Defendant in the illegal conduct herein alleged;

211.     All named  Defendants engaged in an unfair and deceptive trade
practice, fraud and misrepresentation of a material fact, having effect on
interstate commerce, and as a direct or proximate cause injured this Plaintiff
financially by in part, the loss of income derived from Plaintiff's property,
and the subsequent damage caused to Plaintiff's property, and the reporting
of unverifiable financial information transmitted to Consumer Reporting
Agencies as verified true and correct, in other words as undisputed;


**WHEREFORE, PREMISES CONSIDERED**; Plaintiff directs this Court for entry of
judgment against Defendants, SUNTRUST MORTGAGE INC, NATIONSTAR
MORTGAGE LLC., MARSHALL C. WATSON, Esquire, law offices of
MARSHALL C. WATSON, P.A., n/k/a CHOICE LEGAL GROUP P.A., ISGN
FULFILLMENT SERVICES INC, JOHN MALDONADO, STOREY LAW
GROUP P.A., CARRINGTON MORTGAGE SERVICES, LLC, CHRISTIANA
TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, and STANWICH
MORTGAGE LOAN TRUST, jointly, or severally liable to Plaintiff for Civil
Conspiracy, award Plaintiff compensatory damages for the lost rental

income, actual damages to the property, award Plaintiff prejudgment costs, punitive damages, post judgment interest, and other fees and costs in an amount Trier of fact deems is just and fair, determined at Trial.

## COUNT VII.
## FRAUDULENT REPRESENTATION

212.    Plaintiff re-alleges and affirms paragraph 17 through and including paragraph 211 of this Complaint and incorporate same here as if alleged anew.

213.    Defendant ISGN is in the business of fabricating documents to assist their clients in foreclosure cases;

214.    Defendant ISGN provides missing documents in foreclosure cases to give its client the appearance of a colorable claim;

215.    The subject ALLONGE is fabricated by Defendant ISGN as a stand-alone document, indorsed by an alleged "Robo-Signer" Defendant JOHN MALDONADO, which alleges to hold an agency relationship with CHOICE MORTGAGE BANK, is an intentional misrepresentation of a material fact, known to be a misrepresentation at the time those words is uttered, as neither Defendant ISGN nor JOHN MALDONADO is a registered Agent of CHOICE MORTGAGE BANK, at anytime relevant;

216.     The subject ALLONGE is not and was not "firmly affixed" to the

NOTE at any time that ISGN or JOHN MALDONADO fabricated and

indorsed the instrument, as such the WATSON FIRM, knew, or should

have known the ALLONGE is to be used for an illegal purpose; because,

217.     *"An ALLONGE is a piece of paper annexed to a negotiable*

*instrument or promissory note, on which to write endorsements for which*

*there is no room on the instrument itself. Such must be so firmly affixed*

*thereto as to become a part thereof."* Black's Law Dictionary 76 (6th

ed.1990);

218.     In this instant matter the ALLONGE is a stand-alone piece of

paper, not affixed to the NOTE and is allegedly from the Lender to its

successor, when there is plenty of room for the Lender's indorsement

stamp on the ORIGINAL NOTE; because the ALLONGE is an afterthought

to correct the appearance of standing, or lack thereof; furthermore,

219.     The "ORIGINAL ALLONGE TO NOTE" is not the same

ALLONGE in the possession of STOREY LAW GROUP P.A., a copy of

which is attached to its infirm response to a Request for Validation, dated

August 26th 2013; see Plaintiff Exhibits "B" page "13" and Exhibit "P" page

"104," hereto attached; two things which are similar are never the same;

220.      Florida's Uniform Commercial Code does not specifically mention an ALLONGE, but notes that *"[F]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is part of the instrument."* § 673.2041(1), Fla. Stat. (2014); See Booker vs. Sarasota, 707 So.2d 886 (Fla. 1st DCA 1998) (footnote 1).  See also Isaac v. Deutsche Bank Nat. Trust Co., 74 So. 3d 495 (Fla. 4th DCA 2011) (*"An "ALLONGE" is a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself; such must be so firmly affixed thereto as to become a part thereof."*)

221.      Thus, the Court can rely on the plain meaning of the words, "firmly affixed" and the Court may look to decisions of courts in other states for persuasive authority; Two reasons have been cited for the "firmly affixed" rule:  (1) to prevent fraud; and (2) to preserve a traceable chain of title;  *See* Adams v. Madison Realty & Development, Inc., 853 F. 2d. 163, 167 (3rd Cir. 1988). A draft of the 1951 version of the UCC Article 3 included the comment that *"[t]he indorsement must be written on the instrument itself or an ALLONGE, which, as defined … is a strip of paper so firmly pasted, stapled or otherwise affixed to the instrument as to become part of it."*

222.     Defendants ISGN, and JOHN MALDONADO fabricated and indorsed the ALLONGE as a separate piece of paper, well after commencement of the Civil-Circuit-Case, requisitioned by SUNTRUST, or its agent, represented to the Court on the 28th day of September 2011, as the ORIGINAL ALLONGE TO NOTE, by and through the WATSON FIRM, who knew, or should have known docketing the ORIGINAL ALLONGE TO NOTE, is a fraudulent representation of a material fact; because,

223.     One year earlier Defendant the WATSON FIRM, on the 3rd day of August 2010 docketed with the Clerk of Court the "ORIGINAL NOTE" in the subject Civil-Circuit-Case, without the ALLONGE firmly affixed thereto;

224.     The subject ALLONGE is a worthless piece of paper, fabricated from whole-cloth without a foundation and Defendant WATSON FIRM knew, or have known it was misrepresenting a material fact at the time it docketed the ALLONGE, 28th of September 2011, over a year after docketing the ORIGINAL NOTE;

225.     Defendants ISGN, and JOHN MALDONADO fabricated the subject ALLONGE for the sole purpose of litigation, in order to legally take Plaintiff's property by the use of illegal means, fraudulent misrepresentation;

226.     The subject ALLONGE contains an unverified indorsement, the ALLONGE is not dated nor is it permanently affixed to the subject NOTE;

227.     The subject ALLONGE is fabricated without CHOICE

MORTGAGE BANK's knowledge or consent;

228.     As a direct and proximate cause of Defendants, the WATSON

FIRM, ISGN, and JOHN MALDONADO's misrepresentation of a material fact

is a direct and proximate cause of the Plaintiff's financial injury;

229.     Plaintiff's loss includes the rental income from the property,

subsequent damages caused to the property; because in part,

230.     The ALLONGE is fabricated from whole-cloth, appears to provide

SUNTRUST with standing, when in fact Fannie Mae is the owner of the

NOTE and the record in the Civil-Circuit-Case is barren as to any

representation that Fannie Mae authorized SUNTRUST to act in its stead;

231.     Complaint was served on the tenant, which relied on the

allegations contained in the subject Complaint, abandoned the property

shortly thereafter, vandals entered the unoccupied structure and did

significant damage to the interior; making the property uninhabitable, *ergo*

making it impossible for Plaintiff to rent the property and subsequently pay

the Mortgage;

232.     Premises considered, the act of Defendants ISGN joined with

its employee JOHN MALDONADO, fabricating the subject ALLONGE from

whole-cloth, presented to the Court as the ORIGINAL ALLONGE TO

NOTE, by and through Defendant WATSON FIRM, is a fraudulent representation of a material fact, known to be a misrepresentation at the time the ALLONGE is represented to the Court by and through the WATSON FIRM;

233.     Defendant WATSON FIRM *et al.*, vis-à-vis filing a void stand-alone ALLONGE, knew, or should have known the ALLONGE is a bogus security instrument; nevertheless docketed the ALLONGE with the Clerk of Court September 28th 2011, in a foreclosure action, in order to trick the Trier of fact, by misrepresenting the ALLONGE as *prima facie* evidence appearing to show standing; however,

234.     Learned attorney, MARSHALL C. WATSON Esquire knows, or should have known the subject ALLONGE is actually a void instrument, not dated, authenticated nor is it affixed to the NOTE, is without force or effect, is a Fraud upon the Court by misrepresentation of a material fact, known, or should have known was a misrepresentation at time of presentment, by an officer of the Court, with a recent history of providing questionable documents in foreclosure cases;

235.     MARSHALL C. WATSON Esquire, is a learned attorney, authorized to practice law in the State of Florida, knew, or should have known the subject ALLONGE is fabricated from whole-cloth for the sole

purpose of litigation, to wrongly convince the Court SUNTRUST is before it with Standing;

236.    The Court, in the Civil-Circuit-Case relies on the subject ALLONGE, as does this Plaintiff in the Civil-Circuit-Case, which was on-going and active until the 13th day of June 2014, predicated in part on a void ALLONGE, presented to the Court in that Civil-Circuit-Case;

237.    As a direct and proximate cause, related in part to the subject ALLONGE, Plaintiff suffers from mental distress, has suffered a financial injury.


**WHEREFORE, PREMISES CONSIDERED;** Plaintiff directs this Court for entry of judgment against Defendants, MARSHALL C. WATSON Esquire, respondeat superior, law offices of MARSHALL C. WATSON, P.A., n/k/a CHOICE LEGAL GROUP P.A., SUNTRUST MORTGAGE INC., NATIONSTAR MORTGAGE, LLC, ISGN FULFILLMENT SERVICES INC, and JOHN MALDONADO, held jointly, or severally liable to the Plaintiff for the loss of rental income from the subject property, actual damages to the subject property, award Plaintiff treble damages for Fraudulent Misrepresentation, award Plaintiff prejudgment costs, punitive damages, post judgment interest,

and other fees and costs in an amount Trier of fact deems is just and fair, determined at Trial.

## COUNT VIII.
## INTRINSIC FRAUD

238.    Plaintiff re-alleges and affirms paragraph 17 through and including paragraph 237, of this Complaint and incorporate same here as if alleged anew.

239.    At all times relevant, Defendant SUNTRUST by and through the WATSON FIRM, and third parties ISGN and JOHN MALDONADO either facilitated the act of fabricating an ALLONGE from whole-cloth, caused or directed an other to commit the act, or permitted an other to commit the act alleged;

240.    Subsequently the subject ALLONGE is docketed with the Clerk of Court by SUNTRUST by and through law offices of MARSHALL C. WATSON, P.A., an officer of the Court, knowing or should have known that the subject ALLONGE is a void document;

241.    Defendants SUNTRUST by and through the WATSON FIRM, ISGN, and JOHN MALDONADO acted as the agent for each other, and Defendants, SUNTRUST by and through the WATSON FIRM, ISGN, and

JOHN MALDONADO acted within the scope of their agency as if acting as the agent of another;

242.    Knowing or realizing that others were engaging in or planning to engage in illegal conduct, each Defendant, SUNTRUST by and through the WATSON FIRM, ISGN, and JOHN MALDONADO nevertheless facilitated the commission of this illegal act herein alleged;

243.    Defendants SUNTRUST by and through the WATSON FIRM, ISGN, and JOHN MALDONADO intended to and did encourage, facilitate or assist in the commission of this illegal act herein alleged, and thereby aided and abetted the others in the illegal conduct herein alleged;

244.    Defendants SUNTRUST by and through the WATSON FIRM, ISGN, and JOHN MALDONADO engaged in an unfair and deceptive trade practice, fraud and a misrepresentation that caused the loss of income derived from Plaintiff's property, thus injured the Plaintiff financially, in order to, under color of law, extract $119,766.65, plus interest, escrow etc., by SUNTRUST, predicated upon a foundational instrument which is a void ALLONGE, a fabricated document, docketed in the Civil-Circuit-Case, is an act of intrinsic fraud, by and through the WATSON FIRM.

**WHEREFORE, PREMISES CONSIDERED;** Plaintiff directs this Court for entry of judgment against Defendants, SUNTRUST, MARSHALL C. WATSON, Esquire, by and through law offices of MARSHALL C. WATSON, P.A., n/k/a CHOICE LEGAL GROUP P.A., ISGN FULFILLMENT SERVICES INC, and JOHN MALDONADO, to be held jointly, or severally responsible for an act of intrinsic fraud; award Plaintiff treble damages for Intrinsic Fraud; award Plaintiff compensatory damages for the lost rental income, actual damages to the property in question, award Plaintiff prejudgment costs, punitive damages, post judgment interest, and other fees and costs in an amount Trier of fact deems is just and fair, determined at Trial.

## COUNT IX.
## EXTRINSIC FRAUD

245.     Plaintiff re-alleges and affirms paragraph 17 through and including paragraph 244 of this Complaint and incorporate same here as if alleged anew;

246.     At all times relevant, Defendant SUNTRUST, later NATIONSTAR by and through the WATSON FIRM, either facilitated the act of fabricating a MERS assignment from whole-cloth, caused or directed an other to commit the act, or permitted an other to commit the act alleged; subsequently the

subject MERS assignment is recorded in the public domain, first day of January 2011. The subject MERS assignment is a Robo-Signed document, fabricated from whole-cloth for the sole purpose of litigation;

247.     Alleged Robo-Signer BRYAN BLY, the party which executed the MERS assignment in question, on the 4th day of November 2010 gave a video deposition taken by the Forrest Law Firm, in case number 2009-CA-007211, a video deposition in Plaintiff's possession;

248.     Alleged Robo-Signer BRYAN BLY, is employed by NATIONWIDE TITLE CLEARING INC;

249.     NATIONWIDE TITLE CLEARING INC is in the business of fabricating missing documents for the use in court, to foreclose on home-owners;

250.     Alleged Robo-Signer BRYAN BLY signed the subject MERS assignment as its Vice President, authorized by and through a corporate resolution between NATIONWIDE TITLE CLEARING INC, and MERS;

251.     Alleged Robo-Signer BRYAN BLY acting in the capacity as Vice President of MERS indorsed and assigned Plaintiff's Mortgage, together with the NOTE, however MERS is not a party to the NOTE, and the record is barren as to the authority of BRYAN BLY to transfer Plaintiff's NOTE, by and through a MERS assignment;

252.     Defendants SUNTRUST, later NATIONSTAR by and through the WATSON FIRM knew, or should have known MERS is not a party to the NOTE;

253.     The WATSON FIRM also knew, or should have known when it initiated the subject foreclosure action, an "*in rem*" action against the Mortgage, MERS is and was the Mortgagee of record and continued to be the Mortgagee well after commencement;

254.     The NOTICE OF LIS PENDENS and the accompanied COMPLAINT is received by the Clerk of Court on the 4th day of December 2009, whereby the Plaintiff SUNTRUST seeks to foreclose the Mortgage[4], however MERS is the holder of the Mortgage on that day; not until a year later is the Mortgage assigned by BRYAN BLY; and,

255.     The act of recording the Robo-Signed assignment, on the 10th day of January 2011, is an act of Extrinsic Fraud; as,

256.     Alleged Robo-Signer BRYAN BLY testified that he never participates in the preparation of the assignments he signs;

---

[4] Foreclosure is against the Mortgage is an in *rem action*, however Plaintiff [in the Civil-Circuit-Case] alleges the subject action is against the NOTE, [see Complaint paragraph 3. Federal National Mortgage Association is the owner of the note Plaintiff is the servicer of the loan and is the holder of the note. Federal National Mortgage Association has authorized Plaintiff to bring this present action on the note.] however proof is noticeably absent.

257.     Alleged Robo-Signer BRYAN BLY testified he signs batches of

two-hundred (200) plus assignments at a time, sum five-thousand (5,000)

signatures a day, on average, which equates to twelve (12) seconds per

document / signature, to wit;

**"Can you tell me on any given day how many assignments or other documents
you sign?"**
**"Are you looking for a ballpark average?"**
**"Ballpark. I certainly don't expect you to remember exactly."**
**"I'd say 5,000."**
**"Would that be an average day for you?"**
**"That would be average."**
**"Would it be fair to say that during your tenure at NTC you've probably signed
an excess of 50 or 60 thousand documents?"**
**"Yes."**
**"Could be higher than that?"**
**"Yes."**
**"With signing so many on any given day, can you estimate for me the amount of
time you spend on any given document?"**
**"Less than a minute."**
**"When you're presented with a document to sign or notarize, do you take any
steps to verify any of the information contained in the document?"**
**"Not in the body."**
**"When you say 'not in the body' are there any other steps that you take?"**
**"I'm just looking to make sure it's been fully signed."**
**"Would it be accurate to say that you are presented with a stack of documents
to sign, and your practice is to look at the document, see if it's been signed,
affix your signature to it and then move on to the next document?"**
**"Correct."**

258.     Alleged Robo-Signer BRYAN BLY testified that he does not

verify any of the information contained in the body of the documents he

signs;

259.     Defendant BRYAN BLY testifies that the desk he works at

does not have a line-of-sight to the desk of the Notary Public CRYSTAL

MOORE, an alleged Robo-Signer;

260.     Defendant BRYAN BLY testifies that he is authorized, by

NATIONWIDE TITLE CLEARING INC's Corporate Resolution, to sign

documents as Vice President for over twenty sum corporations, like

JPMorgan Chase and Wells Fargo Bank, *et al.*, to wit;

**"In addition to notarizing assignments of mortgage, do you ever sign
assignments as a vice president of a company?"**
**"Yes."**
**"For which companies have you signed as vice president?"**
**"I couldn't list all."**
**"Could you give me some examples?"**
**"Chase Morgan. Wells Fargo. I'm on pretty much every corporate resolution."**
**"Would it be accurate to say that there are maybe an excess of 20 companies or
banks that you sign as vice president?"**
**"That would be fair to say."**

261.     Alleged Robo-Signer BRYAN BLY testified when asked what

an assignment of Mortgage is, responded, "*I'm not really sure.*"

262.     Defendants SUNTRUST, later NATIONSTAR by and through the

WATSON FIRM, engaged in continuous and multiple unfair and deceptive

trade practice, fraud and a misrepresentation which caused the loss of

income derived from Plaintiff's property, thus injured the Plaintiff financially;

263.     In order to, under color of law, extract $119,766.65, plus interest, escrow etc., by SUNTRUST, later NATIONSTAR, fabricated a Robo-Signed voidable MERS assignment which is duly recorded in the public domain;

264.     The subject MERS assignment combined with the ALLONGE allegedly transferred the same Mortgage and NOTE by the same Grantor, set over to two different parties is an act of Stellionation; and obviously one of the alleged actual transfers did not, could not occur, consequently it appears CHOICE MORTGAGE BANK may be Double-Dipping;

265.     The subject MERS assignment Robo-Signed by Bryan Bly and the ALLONGE docketed in the Civil-Circuit-Case, together appears as CHOICE MORTGAGE BANK is selling and transferring the same Mortgage-NOTE twice to two different persons, recorded in the public domain is an act of Extrinsic Fraud;

266.     The MERS assignment is legally without force or effect, is voidable as it relates to the subject foreclosure action;

267.     The MERS assignment shows a break in the Chain-of-Title; also shows the initial Plaintiff lacked standing;

268.     The foregoing is in part the cause of Plaintiff's loss of income derived from property, thus injured the Plaintiff financially.

**WHEREFORE, PREMISES CONSIDERED**; Plaintiff directs this Court for entry of judgment against Defendant, SUNTRUST MORTGAGE INC., its successor NATIONSTAR MORTGAGE, LLC, MARSHALL C. WATSON, Esquire, MARSHALL C. WATSON, P.A., n/k/a CHOICE LEGAL GROUP P.A., to be held jointly, or severally responsible for an act of extrinsic fraud; award Plaintiff compensatory damages for the lost rental income, actual damages to the property in question, award Plaintiff treble damages for Extrinsic Fraud, award Plaintiff prejudgment costs, punitive damages, post judgment interest, and other fees and costs in an amount Trier of fact deems is just and fair, determined at Trial.

### COUNT X.  DODD-FRANK ACT
### <u>VIOLATION OF TRUTH IN LENDING ACT</u>
### <u>REAL ESTATE SETTLEMENT PROCEDURES ACT</u>

269.      Plaintiff re-alleges and affirms paragraph 17 through and including paragraph 268 of this Complaint and incorporate same here as if alleged anew.

270.      Plaintiff caused to be mailed, 26th of July 2013, a Qualified Written Request ("QWR") under the REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 U.S.C. ¶ 2605(e)(B), USPS Certified Mail, Return Receipt Requested 7009 2820 0001 5147 8864, addressed to

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND

SOCIETY. FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN

TRUST, SERIES 2012-13; because,

271.      Plaintiff is notified on the 25th day of July 2013, during a "CMC"

Hearing, Defendant CHOICE LEGAL GROUP P.A., in the Civil-Circuit-Case,

is substituted by STOREY LAW GROUP P.A. and subsequently the Plaintiff

[in error] SUNTRUST is substituted by CHRISTIANA TRUST; however,

272.      On that date, 25th of July 2013, NATIONSTAR is the Plaintiff in

the Civil-Circuit-Case, not SUNTRUST; nevertheless Plaintiff mailed a QWR

to a debt collector, pretending to be a Creditor;

273.      Written communication was clearly marked as a QWR;

274.      RESPA ¶2605(e) requires respondent provide a written response

acknowledging receipt of the QWR within five (5) days thereafter (excluding

date of receipt, legal public holidays, Saturdays, and Sundays), otherwise

there is a one-thousand ($1,000.00) penalty which may be raised under the

DODD-FRANK Act to two-thousand ($2,000.00) penalty that the Court may

allow in case of a pattern or practice;

275.      The first two questions contained in the QWR is as follows;

> 1. Please provide the identity of the Beneficial-Owner of this
> consumer credit transaction, a/k/a the Mortgage-Loan
> pursuant to Section 131(f) of TILA (15 USC 1641(f)(2));

2. Please provide the identity of the Master-Servicer, servicers, subservicers, contingency servicers, back-up servicers or special servicers for this Mortgage-Loan, including the address and contact information for same, pursuant to Section 13 1(f) of TILA (15 USC 1641(f)(2));

276.     Also found contained in the QWR is the following statement;

*If you, Christiana Trust are not the proper party to attest to the facts of this matter, please forward this notice to the proper party and then inform the "Borrower" in writing, of whom you are forwarding it to. In the absence of any receipt of such a notice, it will be concluded that you agree that you are the proper party to attend to this matter.*

277.     QWR has a dual effect of invoking Plaintiff's rights under RESPA as well as the Truth in Lending Act (hereinafter "TILA") 15 U.S.C. ¶1641(f)(2) Section 131(f)(2); *"...Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."*

278.     This question is to be answered by an Assignee of the "Mortgage Loan" within eleven (11) days of actual receipt of the QWR, but that question has gone unanswered to this present day; as,

279.     Defendant CHRISTIANA TRUST, did not respond to Plaintiff's QWR; which is a statutory violation of Section (f)(2);

280.    A statutory violation of Section (f)(2) makes the Assignee of a "Mortgage Loan" liable to the obligor for up to $4,000.00, plus actual damages and fees; see TILA ¶130 [15 U.S.C. 1640];

281.    Defendant CHRISTIANA TRUST, did not respond nor did respondent identify who is servicing the subject debt, nor did respondent disclose the requested identity of the Obligee, by standing silent, when it has a duty to speak; $6,000.00 for violating two statutes, Servicer failed to timely response and Assignee failed to disclose the identity of the Obligee, because there is no Creditor per-say, only a Debt Buyer;

282.    Failure of CHRISTIANA TRUST, to respond to the QWR in a vacuum, a one time event is not the case here, rather combined with the fact CHRISTIANA TRUST, failed to respond to four (4) duly presented Request for Validation, shows a pattern and practice of non-compliance; see 12 USC 2605(f)(1)(B); Reg x, 24 C.F.R. 3500.21(f)(1)(i), an intentional deception by standing silent when it has a duty to speak;

283.    As a direct and proximate cause of the foregoing, Plaintiff may loose property in excess of one-hundred-thousand ($100,000.00), suffers mental distress, experiences headaches presumptively from stress related to the collection efforts of a trespasser, namely CHRISTIANA TRUST.*et al.*, facilitated by and through Counsel.

**WHEREFORE**, premises considered, Plaintiff directs this Court for entry of

judgment against Defendant CHRISTIANA TRUST, A DIVISION OF

WILMINGTON SAVINGS FUND SOCIETY. FSB, AS TRUSTEE FOR

STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, award Plaintiff

the amount of Four-Thousand ($4,000.00) in statutory damages for each

violation of Section 131(f) of the Truth In Lending Act, 15 U.S.C. Section

1641(f)(2), failure to disclose; and award Plaintiff Two-Thousand ($2,000.00)

in statutory damages against the Defendant for each violation of RESPA as

defined under 12 U.S.C. § 2605(e)(1), for demonstrating a pattern and

practice; award Plaintiff prejudgment costs, actual damages, including

damages for mental distress, post judgment interest, and other costs and

fees in an amount Trier of fact deems is just and fair, determined at Trial.

Respectfully submitted;


By: _____

**MAUREEN ALEXANDER**

By: _____

**JOHN KORMAN**

State of Florida           }
                           } ss
County of Palm Beach   }

JURAT

All statements made in this document are true, correct, as are the

attached Exhibits and this Complaint is made under the penalty of

perjury;


Sworn to (or affirmed) and subscribed before me this *16*th day of

May 2014; by MAUREEN ALEXANDER, who is either personally known, or

proved to be the person named in and who executed the foregoing instrument,

being first duly sworn, MAUREEN ALEXANDER acknowledged that she

executed said instrument for the purposes therein contained, of her free and

voluntary act and deed.

_____
MAUREEN ALEXANDER

WITNESS my hand and official seal.

_____
NOTARY PUBLIC Signature


_MAcKendy Gourdet_     _JULY 4 2017_
NOTARY Printed Name     My commission expires

MACKENDY GOURDET
Notary Public, State of Florida
Commission # FF 33420
My comm. expires July 4, 2017

**Page 84 of 85**

State of Florida        }
                            }  ss
County of Palm Beach  }

**JURAT**

All statements made in this document are true, correct, as are the attached Exhibits and this Complaint is made under the penalty of perjury;

Sworn to (or affirmed) and subscribed before me this 14th day of June 2014; by JOHN KORMAN, who is either personally known, or proved to be the person named in and who executed the foregoing instrument, being first duly sworn, JOHN KORMAN acknowledged that he executed said instrument for the purposes therein contained, of his free and voluntary act and deed.

WITNESS my hand and official seal.       _____

                                              JOHN KORMAN

_____
**NOTARY PUBLIC Signature**

Claudia J. Brande
Notary Public
State of Florida
My Commission Expires 11/01/2015
Commission No. EE 143039

Claudia Brande                11/01/2015
**NOTARY Printed Name**          **My commission expires**